Forrest E. EDDY, Plaintiff-Appellant,

v.

John L. BROWN, Jr., An Individual, Dallas D. Wilson, Jr., an Individual, and Texaco Inc., a Delaware Corporation, Defendants-Appellees.

No. 62086.

Supreme Court of Oklahoma.

Feb. 25, 1986.

## MEMORANDUM OPINION

OPALA, Justice.

Appellant, Forrest E. Eddy [Eddy], sought to recover—under two theories of liability—actual and exemplary damages against his employer, Texaco Inc. [Texaco], his supervisor, John L. Brown, Jr. [Brown] and his foreman, Dallas D. Wilson, Jr. [Wilson], all of whom will be called collectively "employer," for the tort of outrage[1] and invasion of privacy. Eddy's grievance under the outrage claim was that Texaco, acting through its agents, Brown and Wilson, engaged in a course of intentional harrassment that subjected him to the ridicule of his co-workers and resulted in mental anguish which ultimately caused him to quit the job. In the invasion-of-privacy claim Eddy complained of Brown's disclosure to the co-workers at the employer's Tulsa refinery of information about Eddy's psychiatric problems and evaluation. Based on its conclusion that the undisputed facts tendered by the evidentiary materials fell short of establishing a legal claim against the employer under either of the two causes of action, the district court gave summary judgment in its favor. The Court of Appeals reversed and remanded the cause for trial by jury. On the employer's petition for certiorari we now vacate the Court of Appeals' opinion and affirm the trial court's judgment.

Two questions stand presented for our review: [1] whether the employer's conduct may be regarded by reasonable minds as "... so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"[2] and [2] whether the employer's disclosure of Eddy's psychiatric problems to his co-workers may give rise to a cause of action for invasion of privacy.

Jerry L. Smith, Messrs. Frazier, Smith, Underwood & Cates, P.A., Tulsa, for plaintiff-appellant.

Jack M. Short, Tulsa, for defendants-appellees.

---

1. The tort of outrage is more commonly known as one for the intentional infliction of mental or emotional distress. See *Williams v. Lee Way Motor Freight, Inc.*, Okl., 688 P.2d 1294, 1298 [1984].

2. See Restatement (Second) of Torts, Ch. 2, The Interest in Freedom From Emotional Distress, § 46, comment d [1977], for description of conduct that may be deemed actionable under the tort-of-outrage rubric.

We answer both questions in the negative.

## I

## OUTRAGEOUS AND EXTREME CONDUCT CAUSING EMOTIONAL DISTRESS

Eddy was an employee of Texaco from March 18, 1968 until he quit on December 31, 1981. From mid-August of 1981 until the end of his employment he was on sick leave with a back injury. Eddy's complaints of harrassment relate largely to the aftermath of his union's strike against Texaco in January of 1980. His claims here under consideration rest on a scenario unfolded by these facts: [1] Texaco did not efficiently handle his workers' compensation claim; [2] Texaco was negatively disposed towards him because of his complaint with the National Labor Relations Board; [3] Texaco turned down his claim of payment for his accrued 1979 vacation which he requested in lieu of taking off work; [4] Texaco refused him vacation time after he returned to work following a sick leave; [5] Wilson and Brown ridiculed him for his diligent efforts as a union steward in collecting a large number of grievances, although the two men did concede he was correct as to 90% of these grievances; [6] he was told that, although he was overqualified for his job, he would never advance; [7] he was requested to rewrite the training manual without compensation; [8] a reassignment to train other employees, coupled with his removal from the graveyard shift, resulted in a reduction of his pay; [9] Texaco required him to submit to a hearing test although he had taken the test two months earlier; [10] Wilson ridiculed him when he missed the test requirements on a project; [11] the foreman rejected Eddy's idea for certain improvements and yet tried that very idea three more times without giving Eddy credit for the suggestion; [12] while Eddy was on sick leave Brown and Wilson harrassed him about medical certificates which were needed because the employer would not honor a differing diagnosis by Eddy's chiropractor; [13] Brown and Wilson mimicked and ridiculed Eddy behind his back after directing him to read a safety bulletin aloud to his co-workers when they knew Eddy's speech was impaired by post-surgery medication; [14] his foreman commented Eddy had done a stupid thing when, in an effort to stop a kitchen blender, he stuck his hand between its blades and received severe cuts; [15] Texaco arranged an appointment for Eddy with the company physician who prescribed "mood elevators" and recommended psychiatric evaluation and [16] because of the strain from his financial situation and harrassment by bill collectors, Eddy had to seek psychiatric counseling.

■ Oklahoma recognizes intentional infliction of emotional distress as an independent tort.[3] The new delict, also known as the tort of outrage, is governed by the narrow standards of § 46 Restatement of Torts (Second) [1977].[4] This section provides in pertinent part:

"(1) One who by extreme or outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

■ It is the trial court's responsibility initially to determine whether the defendant's conduct may reasonably be regarded as sufficiently extreme and outrageous to meet the § 46 standards.[5] Only when it is found that reasonable men would differ in an assessment of this critical issue may the

---

3. *Breeden v. League Services Corp.*, Okl., 575 P.2d 1374 [1978]; *Williams v. Lee Way Motor Freight, Inc.*, supra note 1 and *Munley v. ISC Financial House, Inc.*, Okl., 584 P.2d 1336 [1978].

4. *Breeden v. League Services Corp.*, supra note 3; *Williams v. Lee Way Motor Freight, Inc.*, supra note 1 and *Munley v. ISC Financial House, Inc.*, supra note 3.

5. *Breeden v. League Services Corp.*, supra note 3 at 1377.

tort-of-outrage claim be submitted to a jury.

■ Liability for the tort of outrage does not extend "to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind ..."[6] Not every abusive outburst or offensive verbal encounter may be converted into a tort; on the contrary, it would be indeed unfortunate if the law were to close all the safety valves through which irascible tempers might legally blow off steam. The outrageous and extreme nature of the conduct to be examined should not be considered in a sterile setting, detached from the milieu in which it took place.[7] The salon of Madame Pompadour is not to be likened to the rough-and-tumble atmosphere of the American oil refinery. "There is a difference between violent and vile profanity addressed to a lady, and the same language to a Butte miner and a United States marine." Prosser, *Intentional Infliction of Mental Suffering: A New Tort*, 37 Mich.L.Rev. 874, 887 [1939]. Conduct which, though unreasonable, is neither "beyond all possible bounds of decency" in the setting in which it occurred, nor is one that can be "regarded as utterly intolerable in a civilized community," falls short of having actionable quality. Hurt feelings do not make a cause of action under the tort-of-outrage rubric.[8]

■ Measured by the § 46 standards, the employer's conduct may not reasonably be regarded as so *extreme* and *outrageous* as to justify submission of Eddy's claim to the jury. We must hence affirm the district court's summary judgment on Eddy's tort-of-outrage quest for recovery.

## II

## INVASION OF PRIVACY

Count two of plaintiff's petition alleges a claim for invasion of privacy, or more specifically, the torts of unreasonable intrusion upon his seclusion and of unreasonable publicity on his private life. Oklahoma has adopted the legal norms of the Restatement of Torts (Second) § 652A.[9]

■ While an investigation into a person's private concerns may subject a defendant to liability for the tort of intrusion upon one's seclusion, here the information about psychiatric visits was a part of Eddy's employment medical records.[10] It was hence of legitimate concern to his supervisor.

■ Unreasonable publicity of the private life of another is a tort with three constituent elements: [1] publicity [2] which is unreasonable and [3] is given as private fact.[11]

6. Restatement of Torts (Second), § 46, comment d, *supra* note 2. The tort of outrage protects emotional tranquility *against serious invasion only*. *Extraordinary* transgression of the bounds of civility is required. *Williams v. Lee Way Motor Freight, Inc., supra* note 1 at 1297.

7. *Pakos v. Clark*, 253 Or. 113, 453 P.2d 682 [1969].

8. *Munley v. ISC Financial House, Inc., supra* note 3 at 1338 and *Breeden v. League Services Corp., supra* note 3 at 1377. See also, *Harris v. Jones*, 281 Md. 560, 380 A.2d 611, 614–615 [1977]; *Mundy v. Southern Bell Tel. and Tel. Co.*, 676 F.2d 503, 505 [11th Cir.1982] and *Hall v. May Dept. Stores Co.*, 292 Or. 131, 637 P.2d 126, 129 [1981].

9. *McCormack v. Oklahoma Pub. Co.*, Okl., 613 P.2d 737, 738 [1980] and *Munley v. ISC Financial House, Inc., supra* note 3 at 1339.

10. Restatement of Torts (Second), Ch. 28A, Intrusion Upon Seclusion, § 652B, comment b, [1977]:

"... It may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents...."

11. *McCormack v. Oklahoma Pub. Co., supra* note 9 at 740, 741.

" 'Publicity' means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge ... The difference is not one of the means of communication ... [but] one of a communication that reaches, or is sure to reach the public." [12]

According to undisputed evidentiary material, only a *limited* number of co-workers heard that Eddy was undergoing psychiatric treatment. Specifically, one of Eddy's co-workers said that Wilson had told some of them at the refinery that Eddy had been committed to a hospital for evaluation. Three other co-workers who were Eddy's friends also told him that they had heard the rumor.

These facts, even when taken in the light most favorable to Eddy, do not amount to "publicity" in the sense of a disclosure to the general public—the extent of publicity required in order to give rise to an action for public disclosure of private facts.[13] Inasmuch as *only a small group* of co-workers were made privy to Eddy's private affairs, Eddy's second claim must also fail. We find it unnecessary to reach for discussion the other constituent elements of the claim. When the trial court's judgment may be supported by any theory, it must be affirmed.

Opinion of the Court of Appeals is vacated and the trial court's judgment is affirmed.

All the Justices concur.

---

**12.** Restatement of Torts (Second), Ch. 28A, Intrusion Upon Seclusion, § 652D, comment (a) [1977].

**13.** For a case which affirmed the trial court's summary disposition on similar facts, see *Wells v. Thomas*, 569 F.Supp. 426, 437 [E.D.Pa.1983]. "Publication to the community of employees at staff meetings and discussions between defendants and other employees is clearly different

from the type of *public* disclosure found in cases relied upon by plaintiff." See also, *Rogers v. International Bus. Machines Corp.*, 500 F.Supp. 867, 870 [W.D.Pa.1980]; *Avins v. Moll*, 610 F.Supp. 308 [E.D.Pa.1984]; *Houghton v. New Jersey Mfrs. Ins. Co.*, 615 F.Supp. 299 [E.D.Pa.1985] and *Beard v. Akzona, Inc.*, 517 F.Supp. 128, 133 [E.D.Tenn.1981].